**UNITED STATES of America,**
**Plaintiff–Appellee,**

v.

**Jose Luis GARCIA–CAMACHO,**
**Defendant–Appellant.**

**No. 96–50605.**

United States Court of Appeals,
Ninth Circuit.

Argued and Submitted Aug. 8, 1997.

Decided Aug. 29, 1997.

1266

Christopher P. Tenorio, Federal Defenders of San Diego, Inc., San Diego, California, for the defendant-appellant.

Yvonne E. Campos, Assistant United States Attorney, San Diego, California, for the plaintiff-appellee.

Before: BROWNING, BRUNETTI, and TROTT, Circuit Judges.

TROTT, Circuit Judge:

### Overview

Jose Luis Garcia–Camacho ("Appellant") appeals his sentence, imposed following his guilty-plea conviction for assault on a federal officer, in violation of 18 U.S.C. § 111, aiding and abetting escape, in violation of 18 U.S.C. §§ 751(a) and 2, and illegal entry, in violation of 11 U.S.C. § 1325. The district court applied USSG § 2A2.2, the guideline for aggravated assault, in sentencing Appellant.

Appellant argues that the district court erred in applying USSG § 2A2.2 instead of USSG § 2A2.4, the guideline for obstructing or impeding officers. He contends that his conduct during his arrest did not "involve" serious bodily injury, as required by section 2A2.2 because (1) he did not intend to injure Border Patrol Agent Manen (whose ankle was broken) and (2) his conduct did not directly result in Agent Manen's injury.

Appellant also contends that the district court erred in applying the enhanced penalty provision set forth in 18 U.S.C. § 111(b),

which provides for a ten-year statutory maximum (rather than a three-year maximum under section 111(a)), because Appellant did not "inflict" bodily injury on Agent Manen.

Appellant lunged at and then struggled with Agent Manen; during the course of the struggle, Agent Manen's ankle was severely broken. The district court did not err in finding that Appellant's conduct "involved" serious bodily injury and thus did not err in applying section 2A2.2. Further, Appellant "inflicted" bodily injury on Agent Manen, and therefore the enhanced penalty provision of section 111(b) applies. Neither section 2A2.2 nor section 111(b) requires that the defendant specifically intend to cause injury.

## Background

On March 17, 1996, Border Patrol Agents observed Appellant and his girlfriend, Guadalupe Guzman–Molina, jump the international boundary fence in the hills east of the Port of Entry at San Ysidro, California. Sometime after the sighting, Agent Manen observed Appellant and Guzman–Molina sitting in a ravine near the top of a hill. He approached them and determined that they were citizens of Mexico. He then directed them to walk toward his nearby border-patrol vehicle. Agent Manen followed approximately three feet behind the couple as they walked up a steep incline. Appellant then yelled "run, run" in Spanish to his girlfriend.

The parties dispute what happened next. At the sentencing hearing, the district court made the following findings:

> [T]his was a case of pre-planned aggravated assault. The Defendant realized that he was about to be busted. He yelled at his accomplice, the person that accompanied him, to run for it. He turned and engaged the agent in a violent assault. They were in close locked combat. As a result of that combat, the agent was thrown to the ground and his ankle was broken. It was very seriously broken.

Appellant contested these factual findings. The court then invited Appellant and the Agent to testify in order to clarify what happened that night. Agent Manen testified as to the events immediately following Appellant's yelling "run, run":

> At the same time, he lunged and attacked me. I was able to get him in a headlock. I was trying to put him down on the ground....
>
> I was wanting, mainly, to get him away from my gun because he was on that side. I was afraid that, if he was able to get my gun, he might use it. So I was trying to get him on the ground and, during the struggle, I fell and heard my ankle pop. We went down on the ground anyway. I was holding on to him and I yelled, "Ten, ten," which means I need help. I couldn't get to my radio, but Agent Escalera heard. He was able to run up there and subdue the individual.

In response to a question regarding the level of force he encountered in the struggle, Agent Manen stated: "I would say it was a great deal. I had to really, I guess, torque on him—stress to get him to go down. It was—he was definitely struggling." Appellant did not testify.

The district court calculated Appellant's sentence according to section 2A2.2. Because of the "aggravated and serious nature of the assault," the district court imposed a sentence at the top of the applicable range.

## Standard of Review

█ A district court's interpretation and application of the Sentencing Guidelines are reviewed de novo. *United States v. Shrestha,* 86 F.3d 935, 938 (9th Cir.1996). A district court's factual findings in the sentencing phase are reviewed for clear error. *Id.* This court gives "due deference to the district court's application of the guidelines to the facts." *United States v. Shabani,* 48 F.3d 401, 404 (9th Cir.1995).

## Discussion

### I. USSG § 2A2.2

█ Two guideline provisions apply to violations of 18 U.S.C. § 111: section 2A2.2, Aggravated Assault, and section 2A2.4, Obstructing or Impeding Officers. USSG App. A. Section 2A2.4 has a base offense level of six and provides for a three-level upward adjustment "if the conduct involved physical contact." USSG § 2A2.4(a) & (b). That sec-

tion also contains a cross reference which provides: "If the conduct constituted aggravated assault, apply § 2A2.2." *Id.* § 2A2.4(c). Section 2A2.2 provides the following definition:

"Aggravated assault" means a felonious assault that *involved* (a) a dangerous weapon with intent to do bodily harm (*i.e.*, not merely to frighten), or (b) *serious bodily injury*, or (c) an intent to commit another felony.

USSG § 2A2.2 comment. (n.1) (emphasis added).

Appellant argues that the district court erred in applying section 2A2.2 because his conduct did not "involve" serious bodily injury, as required by the guideline. Appellant reasons that section 2A2.2 must require either that a defendant "intend" to cause the injury or that a defendant's conduct "directly result" in the injury.

■ On its face, Section 2A2.2 does not require that a defendant "intend" serious bodily injury in order to commit an aggravated assault. Instead, it requires only that the assault "involve" serious bodily injury. *See United States v. McInnis*, 976 F.2d 1226, 1234 (9th Cir.1992) (concluding that section 2A2.2 applied because the defendant's "conduct did constitute a felonious assault and serious bodily injury clearly occurred"). "Involved" does not mean "intended." In fact, the absence of an intent requirement in section (b) of the aggravated assault definition stands in stark contrast to sections (a) and (c), where specific intent is required.

■ If no intent to cause bodily injury is required, Appellant contends, violations of section 111 become strict liability offenses whereby an unintended assault that simply results in serious bodily injury is an aggravated assault. Notably, assault on a federal officer, in violation of 18 U.S.C. § 111, is a general intent crime. *United States v. Jim*, 865 F.2d 211, 215 (9th Cir.1989). Moreover, because "[t]he law will presume that a person intended the natural and probable consequences of his voluntary acts," *United States v. Loera*, 923 F.2d 725, 728 (9th Cir.1991) (quotation omitted), holding Appellant accountable for the serious bodily injury which Agent Manen suffered as a consequence of Appellant's assault does not turn section 111

into a strict liability offense. Section 2A2.2 thus applies even where there is no finding that a defendant had the specific intent to cause serious bodily injury.

Appellant next argues that his conduct did not "involve" serious bodily injury, pursuant to section 2A2.2 because Agent Manen's injury was not the "direct result" of the Appellant's conduct. He asks the court first to read section 2A2.2 as requiring that the injury be the "direct result" of the defendant's action in order to avoid punishing defendants for injuries that are too attenuated from the defendant's conduct. He then contends that he did not directly cause Agent Manen's injury.

Although Appellant cites no case law supporting this interpretation of section 2A2.2, he makes a valid point that there may be circumstances where an injury is so attenuated that a defendant should not be held accountable. For example, if Agent Manen had tripped and twisted his ankle while walking a handcuffed and subdued Appellant back to the patrol car, then perhaps Appellant should not be held accountable for that injury.

However, we need not decide what level of causation is required in order for a defendant's assault to "involve" serious bodily injury. Here, Agent Manen was engaged in a struggle with the Appellant at the time he broke his ankle. The district court found that the injury was a "result of that combat." Moreover, Appellant admitted at his plea hearing that his conduct caused the agent to suffer a broken ankle.

Appellant nevertheless contends that "[t]he injury incurred was a direct result of the agent's conduct, not that of Mr. Garcia." He attempts to divide the episode into two separate events: first, Appellant's lunge; second, the agent's efforts to arrest Appellant. This scenario contradicts the district court's factual findings. The evidence does not support Appellant's theory that he was subdued and no longer struggling at the time of the agent's injury. Agent Manen's testimony clearly indicated that the struggle continued until another agent arrived and placed Appellant in handcuffs. Appellant presents no evidence that the district court's factual

findings are clearly erroneous. Moreover, by distinguishing between the conduct he initiated (the initial struggle) and the conduct the agent initiated (the arrest), Appellant artificially attempts to turn a continuous action into a series of separate events.

Appellant's crass effort to characterize Agent Manen's injury as merely a "job hazard" is equally unavailing. In speculating that "the exact same injury could have resulted from physical contact that was initiated by the agent during the routine arrest of any person attempting illegal entry," Appellant ignores the fact that Agent Manen was not injured while handcuffing a passive defendant, but rather while engaged, in the district court's words, in "close locked combat." The fact that Appellant did not kick the agent's ankle or otherwise come into contact with it does not demonstrate that his behavior was not the cause of the injury.

Appellant committed an aggravated assault as defined in section 2A2.2, and section 2A2.4 directs the district court to apply section 2A2.2 in that circumstance. Giving due deference to the district court's application of the guidelines to the facts, the district court did not err in applying section 2A2.2.

## II.  18 U.S.C. § 111(b)

Appellant asserts that the district court erred in applying the enhanced penalty provision, 18 U.S.C. § 111(b), because Appellant did not "inflict" bodily injury on Agent Manen. Section 111(b) provides the following enhanced penalty:

> Whoever, in the commission of any acts described in subsection (a), uses a deadly or dangerous weapon or *inflicts bodily injury,* shall be fined under this title or imprisoned not more than ten years, or both.

(Emphasis added). Absent application of section 111(b), the penalty for violation of section 111(a) is one-year imprisonment for simple assault and three-years imprisonment in all other cases. Thus, by sentencing Appellant to 51 months, the district court necessarily invoked the section 111(b) enhanced penalty provision.

Appellant's arguments against the imposition of the section 111(b) enhanced penalty provision are similar to those regarding the application of USSG § 2A2.2. He asserts that section 111(b) must require either that a defendant "intend" to cause the injury or that there is a heightened causal relationship between a defendant's conduct and the injury. Appellant's arguments against the application of section 111(b) are equally unavailing. Section 111(b) contains no intent to injure requirement. Moreover, Appellant's efforts to argue that "to inflict" means more than "to cause" similarly fail. Webster's Third New International Dictionary (1976) defines "inflict" as: "to lay (a blow) on; [to] cause (something damaging or painful) to be endured." As demonstrated above, Appellant's conduct did directly cause Agent Manen's injury. Appellant therefore did "inflict" bodily injury on Agent Manen, and the district court did not err in imposing sentence under the section 111(b) enhanced penalty provision.

## CONCLUSION

Neither USSG § 2A2.2 nor 18 U.S.C. § 111(b) require a specific intent to injure. Instead, section 2A2.2 requires only that a felonious assault "involve" serious bodily injury, and section 111(b) requires only that a defendant "inflict" bodily injury in the commission of an assault. Here, Appellant lunged at and engaged in a struggle with Agent Manen, during which Agent Manen's ankle was severely broken. The district court did not err in imposing sentence pursuant to section 2A2.2 and section 111(b). We therefore affirm.

AFFIRMED.