STATE OF MINNESOTA

IN SUPREME COURT

A15-0007

Court of Appeals                                                    McKeig, J.
                                        Took no part, Gildea, C.J., Chutich, J.


State of Minnesota,

                 Respondent,

vs.                                                         Filed:  December 7, 2016
                                                            Office of Appellate Courts
Alie Christine Theodore Dorn,

                 Appellant.

_____

Lori Swanson, Attorney General, Matthew Frank, Assistant Attorney General, Saint Paul, Minnesota; and

Donald J. Aandal, Marshall County Attorney, Warren, Minnesota, for respondent.

Cathryn Middlebrook, Chief Appellate Public Defender, Benjamin J. Butler, Assistant State Public Defender, Saint Paul, Minnesota, for appellant.

_____

S Y L L A B U S

1.      The mens rea required for assault-harm, Minn. Stat. § 609.02, subd. 10(2) (2014), is the general intent to commit an act that constitutes a battery.

2.      The actus reus required for assault-harm is an "infliction" of bodily harm, which refers to an act that constitutes a battery.

1

3.      Assuming without deciding that the Legislature's use of the word "infliction" in the assault-harm definition requires direct causation between the act and the harm, appellant directly inflicted bodily harm.

Affirmed.

O P I N I O N

MCKEIG, Justice.

Appellant Alie Dorn pushed D.E. twice in the chest, causing D.E. to stumble into a nearby bonfire and sustain burn injuries.  After a bench trial, the district court convicted Dorn of first-degree assault under Minn. Stat. § 609.221, subd. 1 (2014) (great bodily harm).  Dorn appealed, arguing that her intent and conduct did not meet the definition of assault under Minn. Stat. § 609.02, subd. 10(2) (2014) (assault-harm).  The court of appeals affirmed, and we granted review.  On appeal to this court, Dorn maintains that the evidence was insufficient to convict her of first-degree assault because (1) she did not intentionally harm D.E., and (2) her actions did not "inflict" bodily injury, which Dorn contends requires direct causation.  We affirm.

I.

On July 20, 2013, appellant Alie Dorn, then 22 years old, attended a large outdoor party near Thief River Falls in Marshall County.  D.E., then 19 years old, also attended.  Most people at the party, including Dorn and D.E., were drinking alcohol.  Dorn and D.E. did not know each other, but at approximately 1:00 a.m., they were standing about 5 feet

2

away from each other next to a large bonfire.[1]  The bonfire was made of wooden pallets surrounded by rocks and bricks of varying sizes, and by 1:00 a.m. it had burned down to embers.

Within earshot of Dorn, D.E. told his friend that Dorn looked like a drug dealer. Dorn overheard and replied, "What?"  D.E. repeated that Dorn looked like a drug dealer. Dorn reacted by pushing D.E. in the chest using two hands.  D.E. lost his balance and took a step or two backwards toward the fire.  Dorn asserts that D.E. then "came at" her, failing to heed the "fair warning" of her first push, at which point she "shoved" D.E. in the chest a second time, again using two hands.[2]  D.E. contests Dorn's allegation that he came at her, asserting that he never regained his balance before Dorn shoved him a second time.  Both agree that D.E. then fell and landed on his right side in the burning embers, sustaining significant burn injuries.

It is disputed whether D.E. tripped on debris around the fire before falling, or fell directly into the fire.  But most witnesses agreed that D.E. stumbled into the fire within seconds of, and as a result of, Dorn's push.  Dorn told police that she "shoved" D.E. to get him out of her personal space because he was "in [her] face," "saying a bunch of stuff,"

---

[1]    D.E. and Dorn disagree about D.E.'s orientation with respect to the fire.  According to D.E., he had his back to the fire, which was three steps behind him.  According to Dorn, D.E. was positioned with his side toward the fire.

[2]    D.E. never touched or attempted to touch Dorn, and Dorn has not appealed the district court's finding that she did not act in self-defense.

3

"calling [her] a drug dealer," and "standing close" to her. She said she did not intend to push D.E. into the fire.

Following a bench trial, the district court convicted Dorn of first-degree assault, Minn. Stat. § 609.221, subd. 1. The district court found that, although Dorn did not intend to push D.E. into the fire, she intentionally pushed D.E. twice in the chest. The district court concluded that this satisfied the intent requirement for assault-harm under *State v. Fleck*, 810 N.W.2d 303 (Minn. 2012). The court of appeals affirmed, holding that Dorn possessed the requisite intent and that her actions "inflict[ed]" D.E.'s injury. *State v. Dorn*, 875 N.W.2d 357, 361-62 (Minn. App. 2016). We granted Dorn's petition for review.

## II.

Dorn challenges her conviction for first-degree assault. Minnesota's first-degree assault statute punishes an individual who "assaults another and inflicts great bodily harm." Minn. Stat. § 609.221, subd. 1.[3] "Assault" is defined as "(1) an act done with intent to cause fear in another of immediate bodily harm or death" (assault-fear), or "(2) the intentional infliction of or attempt to inflict bodily harm upon another" (assault-harm). Minn. Stat. § 609.02, subd. 10 (2014). Dorn argues that the evidence was insufficient to satisfy the definition of assault-harm under section 609.02, subdivision 10(2), because she did not intentionally harm D.E., and her actions did not directly cause D.E.'s injuries.

---

[3] "Great bodily harm" includes "bodily injury . . . which causes serious permanent disfigurement, or which causes a permanent or protracted loss or impairment of the function of any bodily member or organ." Minn. Stat. § 609.02, subd. 8 (2014). Dorn does not dispute that D.E.'s injuries constituted "great bodily harm."

4

Dorn's sufficiency challenge requires us to address the mens rea, actus reus, and causation required for assault-harm.

We review questions of law de novo. *State v. Leathers*, 799 N.W.2d 606, 608 (Minn. 2011). When interpreting statutes, we seek to "effectuate the intention of the legislature." Minn. Stat. § 645.16 (2014). "If the Legislature's intent is discernible from the statute's plain and unambiguous language, the letter of the law shall not be disregarded under the pretext of pursuing its spirit." *State v. Riggs*, 865 N.W.2d 679, 682 (Minn. 2015).

The application of the law to Dorn's conduct requires an evaluation of the sufficiency of the evidence. We will not disturb the verdict if the factfinder, acting with due regard for the presumption of innocence and the requirement of proof beyond a reasonable doubt, could have reasonably concluded that the defendant was guilty of the charged offense. *See State v. Chavarria-Cruz*, 839 N.W.2d 515, 519 (Minn. 2013). We "view the evidence in the light most favorable to the verdict and assume that the factfinder disbelieved any testimony conflicting with that verdict." *State v. Leake*, 699 N.W.2d 312, 319 (Minn. 2005). This standard applies to both bench trials and jury trials. *State v. Palmer*, 803 N.W.2d 727, 733 (Minn. 2011).

### A.

We first consider whether Dorn possessed the mens rea required for assault-harm. "Mens rea is the element of a crime that requires 'the defendant know the facts that make [her] conduct illegal.' " *State v. Ndikum*, 815 N.W.2d 816, 818 (Minn. 2012) (quoting *Staples v. United States*, 511 U.S. 600, 605 (1994)). Without this mens rea element, a statute imposes strict criminal liability. *Id.* Strict-liability statutes are "generally

disfavored," and therefore, "legislative intent to impose strict criminal liability must be clear." *In re C.R.M.*, 611 N.W.2d 802, 805 (Minn. 2000).

In *Fleck*, we concluded that assault-harm requires only general intent. 810 N.W.2d at 309, 312. General intent is satisfied when a defendant "intentionally engag[ed] in the prohibited conduct." *Id.* at 308. In other words, "a general-intent crime only requires proof that 'the defendant intended to do the physical act forbidden, without proof that [she] meant to or knew that [she] would violate the law or cause a particular result.' " *Id.* (quoting 9 Henry W. McCarr & Jack S. Nordby, *Minnesota Practice—Criminal Law and Procedure* § 44.3 (3d ed. 2001)). Further, the defendant must do the act of her own volition or free will. *Id.* at 309.

For assault-harm, "[t]he forbidden conduct is a physical act, which results in bodily harm upon another." *Id.* Specifically, assault-harm requires "only an intent to do the prohibited physical act of committing a battery." *Id.* at 310 (quoting *State v. Lindahl*, 309 N.W.2d 763, 767 (Minn. 1981)). The State must therefore prove that "the blows to complainant were not accidental but were intentionally inflicted." *Id.* (quoting *Lindahl*, 309 N.W.2d at 767).

Dorn argues that *Fleck* erroneously established a strict-liability standard for even friendly consensual touching. To support her argument, she cites our statement that "[t]he forbidden conduct is *a physical act*, which results in bodily harm," *id.* at 309 (emphasis added). According to Dorn, the assault-harm definition must require the intent to do *some* amount of harm in order to avoid creating a strict-liability crime. The court of appeals

6

disagreed, stating that assault-harm requires the "intent to commit a battery," which supplies the allegedly missing mens rea requirement. *Dorn*, 875 N.W.2d at 361-62.

The court of appeals correctly held that the definition of assault-harm does not impose strict liability for even consensual, friendly conduct because it requires a battery. In characterizing the mens rea requirement as the "intent *to commit* a battery," however, the court of appeals conflated the mens rea and actus reus elements of assault-harm. We affirm our statement in *Fleck* that the mens rea element of assault-harm, "intentional," requires only the general intent to do the act that results in bodily harm. 810 N.W.2d at 309; *see also* Minn. Stat. § 609.02, subd. 10(2). As we explain further below, the actus reus element of assault-harm requires that this act constitute a battery. *Fleck*, 810 N.W.2d at 310 (quoting *Lindahl*, 309 N.W.2d at 767).

This distinction is important because in proving the mens rea element of general-intent crimes, the State need not show that the defendant "meant to or knew that [she] would violate the law or cause a particular result." *Fleck*, 810 N.W.2d at 308 (quoting McCarr & Nordby, *supra*, § 44.3). Indeed, *Lindahl* carefully phrases the assault-harm battery requirement, separating the mens rea and actus reus elements: a defendant need only intend "to do the prohibited physical *act* of committing a battery." 309 N.W.2d at 767 (emphasis added). Nothing in *Lindahl* suggests that the defendant must intend *to commit* a battery; rather, the defendant need only intend to commit an act that *constitutes* a battery.

This standard does not impose strict liability because it requires the defendant to "know the facts that make [her] conduct illegal." *Ndikum*, 815 N.W.2d at 818 (quoting

7

*Staples*, 511 U.S. at 605). Specifically, for assault-harm, a defendant must intend the act that makes her conduct a battery; in other words, she must intentionally apply force to another person without his consent. *See* II.B., *infra*. If, instead, we required the intent *to commit* a battery, a defendant would not only need to know the *facts* that make her conduct illegal, but would also need to know that her conduct breaks the law. It is well settled, however, that a mistake of law is generally not a defense to a general-intent crime. *State v. Jacobson*, 697 N.W.2d 610, 615 (Minn. 2005); *see also State v. Wenthe*, 865 N.W.2d 293, 301 n.2, 303 (Minn. 2015) (holding that the clergy sexual conduct statute requires general intent and does not impose strict liability because the act of sexual penetration must be intentional).

The evidence is sufficient to establish that Dorn possessed the mens rea required for assault-harm. Indeed, Dorn admits that she "shoved" D.E. to get him out of her personal space. She does not contend that she pushed D.E. accidentally or involuntarily. Dorn may not have understood that her conduct constituted an unlawful battery, or that it would result in bodily harm. Dorn did, however, intentionally apply force to another person, which satisfied the mens rea element of assault-harm.

B.

Next, we consider whether Dorn's conduct constituted a battery, and therefore satisfied the actus reus required for assault-harm. The court of appeals determined that Dorn's conduct constituted a battery because she applied physical force to D.E. *Dorn*, 875 N.W.2d at 361-63. In Minnesota, the separate crime of battery has been incorporated into the definition of assault. *Compare Gallagher v. State*, 3 Minn. 270, 271-73, 3 Gil. 185,

8

187-88 (1859) (discussing the common-law crime of "assault and battery," which included striking another person), *with State v. Basting*, 572 N.W.2d 281, 286 (Minn. 1997) (holding that punching another person is a statutory "assault").  At common law, criminal battery was "the intentional application of unlawful force against the person of another."  *Johnson v. United States*, 559 U.S. 133, 139 (2010).  "Force" was "satisfied by even the slightest offensive touching."  *Id.*; *see also Battery*, *Black's Law Dictionary* (10th ed. 2014) (defining criminal battery as "[t]he nonconsensual touching of, or use of force against, the body of another with the intent to cause harmful or offensive contact").

Our cases involving criminal battery prior to its assimilation into the criminal assault statutes are consistent with this definition.  *See, e.g.*, *Gallagher*, 3 Minn. at 272 (considering a strike to another person that caused him to lose his balance to be a battery).  Further, since the enactment of the assault statutes, we have specifically stated that "[d]ragging or pushing a person could meet the statutory definition of assault . . . if the act did cause or attempted to cause bodily harm."  *State v. Anderson*, 763 N.W.2d 9, 13 (Minn. 2009).

Dorn correctly points out that the language of the assault-harm definition does not include the word "battery."  Rather, the language requires the "infliction" of bodily harm.  Minn. Stat. § 609.02, subd. 10(2).  "Inflict" means "to lay (a blow) on" or "cause (something damaging or painful) to be endured."  *Webster's Third New International Dictionary* 1160 (2002); *see also The American Heritage Dictionary* 900-01 (5th ed. 2011) ("The act or process of imposing or meting out something unpleasant.").  The definitions

of "battery" and "inflict" are therefore similar, requiring the State to show that the defendant engaged in nonconsensual physical contact.

The evidence is sufficient to show that Dorn's conduct constituted a battery or "infliction" of harm. Dorn pushed D.E. twice in the chest with two hands, hard enough to cause him to lose his balance. Dorn admitted that her actions were not consensual or friendly. Rather, Dorn "shoved" D.E. to get him out of her personal space because he was "in [her] face," "saying a bunch of stuff," "calling [her] a drug dealer," and "standing close" to her. She characterized her first push as "fair warning." At that point, Dorn had committed a battery because she intentionally applied nonconsensual force against D.E. She committed a second battery when she shoved D.E. again. Both of these actions also "inflicted" harm because she imposed something unpleasant, "a blow." As such, Dorn's conduct satisfied the actus reus element of assault-harm.

C.

Finally, we consider whether Dorn's conduct was the legal cause of D.E.'s injuries. The Legislature used the word "cause" in the assault-fear provision, but chose the word "infliction" for the assault-harm provision. Minn. Stat. § 609.02, subd. 10 (defining assault-fear as "an act done with intent to *cause* fear," and assault-harm as "the intentional *infliction* of" bodily harm (emphasis added)). Dorn argues that "inflict" is a stricter standard than "cause" and requires direct, not just proximate or "substantial factor," causation. *See State v. Gatson*, 801 N.W.2d 134, 146 (Minn. 2011) (explaining that under a homicide statute in which the word "cause" is used, the State need only prove that the defendant's acts were a " 'substantial causal factor' leading to the death" (quoting *State v.*

10

*Olson*, 435 N.W.2d 530, 534 (Minn. 1989)); *see also Olson*, 435 N.W.2d at 534 (explaining that a defendant may rebut substantial causation by establishing that "intervening conduct [was] the sole cause of the end result").

Dorn contends that she did not inflict bodily harm because her pushes did not harm D.E. directly; rather, D.E was injured only because he tripped over debris and stumbled into the fire. The district court did not make a finding as to whether D.E. tripped over debris, concluding that this determination was not essential because "[D.E.]'s movements were initiated by [Dorn]'s actions." The court of appeals held that the same "substantial causal factor" standard that applies to "cause" also applies to "infliction," and that Dorn failed to identify a genuine superseding cause under this standard. *Dorn*, 875 N.W.2d at 362.

"When different words are used in the same context, we assume that the words have different meanings." *Dereje v. State*, 837 N.W.2d 714, 720 (Minn. 2013). Again, "inflict" means "to lay (a blow) on" or "cause (something damaging or painful) to be endured." *Webster's Third New International Dictionary*, *supra*, at 1160. "[C]ause" means to "bring into existence" or "effect by command, authority, or force." *Id.* at 356.

Dorn cites a Sixth Circuit case for the notion that the "best" interpretation of "inflict" is "something more precise—and thus something narrower"—than "cause." *United States v. Zabawa*, 719 F.3d 555, 560 (6th Cir. 2013). Specifically, *Zabawa* concluded that "inflict" indicates "a sense of physical immediacy: to cause harm directly, by physical force." *Id.* at 560; *see, e.g.*, *id.* at 559-61 (holding that the injury was not inflicted by the defendant when it may have "resulted from the actions (i.e., the headbutt) of [the victim]

11

himself"); *United States v. Jackson*, 310 F.3d 554, 557 (7th Cir. 2002) (holding that the injury was inflicted by the defendant when it occurred while the defendant "applied force directly to [the victim's] person"); *United States v. Garcia-Camacho*, 122 F.3d 1265, 1269 (9th Cir. 1997) (holding that the injury was inflicted by the defendant when it occurred as a result of the defendant's combative conduct).

Assuming without deciding that an "infliction" requires direct causation as Dorn argues, the evidence is sufficient to show that Dorn directly caused D.E.'s bodily harm. Even if D.E. stumbled on debris as he fell, Dorn pushed D.E. hard enough to cause him to lose his balance within a few feet of hot embers, and D.E. fell into the fire within moments of Dorn's push. The causation standard for assault-harm is therefore satisfied, even under Dorn's narrower proposed interpretation.

Thus, the evidence is sufficient to sustain Dorn's conviction for first-degree assault under Minn. Stat. § 609.221, subd. 1. Specifically, the definition of assault-harm under Minn. Stat. § 609.02, subd. 10(2) is satisfied because (1) Dorn's application of force to D.E. was "intentional," (2) her conduct constituted a battery and was therefore an "infliction" of harm, and (3) her conduct was the direct cause of D.E.'s injuries.

Affirmed.

GILDEA, C.J., took no part in the consideration or decision of this case.

CHUTICH, J., took no part in the consideration or decision of this case.

12