*This opinion is nonprecedential except as provided by
Minn. R. Civ. App. P. 136.01, subd. 1(c).*

**STATE OF MINNESOTA
IN COURT OF APPEALS
A23-1035**

State of Minnesota,
Respondent,

vs.

Robert Daniel Neumiller,
Appellant.

**Filed May 13, 2024
Affirmed
Larkin, Judge
Dissenting, Ross, Judge**

Stearns County District Court
File No. 73-CR-20-7833

Keith Ellison, Attorney General, Ed Stockmeyer, Assistant Attorney General, St. Paul, Minnesota; and

Janelle Prokopec Kendall, Stearns County Attorney, Kyle Triggs, Assistant County Attorney, St. Cloud, Minnesota (for respondent)

Barry S. Edwards, Max A. Keller, Keller Law Offices, Minneapolis, Minnesota (for appellant)

        Considered and decided by Bjorkman, Presiding Judge; Ross, Judge; and Larkin, Judge.

**NONPRECEDENTIAL OPINION**

**LARKIN**, Judge

        Appellant challenges his conviction of criminal vehicular homicide, arguing that the evidence was insufficient to sustain the conviction. We affirm.

**FACTS**

Respondent State of Minnesota charged appellant Robert Daniel Neumiller with criminal vehicular homicide and careless driving. Neumiller waived his right to a jury trial. The parties stipulated to the victim's cause of death: multiple blunt force injuries sustained during a collision between vehicles driven by Neumiller and the victim.

At the ensuing bench trial, the district court heard the testimony of several witnesses and received evidence that included a squad-camera video recording of the collision and an audio recording of a conversation between a state trooper and Neumiller after the collision. Neumiller did not testify.

The district court's posttrial findings of fact indicate that, on July 12, 2019, at approximately 10:00 a.m., Neumiller was driving a Toyota SUV westbound on Interstate 94 (I-94) and exited the freeway at the intersection of I-94 and Highway 23 (the intersection). He was the only person in the vehicle, and he was familiar with the intersection because he had traveled through it many times. The weather was clear.

The exit ramp from I-94 to Highway 23 has two lanes, and each has a stop sign at its intersection with Highway 23. The left lane of the exit ramp is for traffic turning left onto Highway 23 or proceeding straight through the intersection. The right lane is for traffic turning right onto Highway 23. Highway 23 is a divided highway in the area of the exit ramp, with two lanes of traffic on each side of the median. To reach the median from the left lane of the exit ramp, a vehicle must cross two lanes of traffic approaching from the left on Highway 23 at highway speeds.

2

After Neumiller exited I-94, he positioned his vehicle in the left lane of the exit ramp to Highway 23, behind two vehicles that were stopped at the stop sign for that lane. Neumiller's vehicle was more than two car lengths from the stop sign. Once the first of the two stopped vehicles drove away from the stop sign and into the intersection, Neumiller's vehicle did not move for approximately four seconds. And Neumiller's vehicle remained stationary as the second vehicle drove past the stop sign and into the intersection. Once Neumiller started to move his vehicle, he did not stop at the stop sign governing his lane. Instead, Neumiller drove from his original stationary position on the exit ramp into its intersection with Highway 23.

As Neumiller drove past the stop sign and into the intersection, the victim's vehicle was approaching from the left on Highway 23. The victim was driving a small SUV in the right lane of Highway 23. Neumiller pulled out in front of the victim's vehicle, and the victim's vehicle veered to the left. The front passenger's side corner of the victim's vehicle hit the driver's door area and front quarter panel of Neumiller's vehicle. Neumiller's vehicle did not appear to brake or slow down until after the collision.

A state trooper was parked in a squad car approximately 720 feet away from the intersection and witnessed the collision. The trooper activated the recording feature of his squad camera, which enabled recording of the previous 60 seconds and captured the collision on video. The trooper immediately approached the vehicles and found Neumiller unconscious. The victim was conscious, but she died at a hospital later that day from blunt force injuries sustained in the collision.

3

When law enforcement interviewed Neumiller, he did not remember the crash. He acknowledged that he was familiar with the intersection because he drove through it "at least once to probably [five] times a day depending on the day." Although some evidence suggested that Neumiller may have been using his cell phone, the district court found that the state "did not prove beyond a reasonable doubt that [he] was indeed using his phone at the time of, or immediately before, the collision."

The district court found Neumiller guilty as charged. Specifically, it found that the state proved that Neumiller caused the victim's death by operating a motor vehicle in a grossly negligent manner. The district court sentenced Neumiller to 48 months in prison and stayed execution of that sentence for five years.

Neumiller appeals.

**DECISION**

Neumiller challenges his conviction of criminal vehicular homicide, arguing that the evidence presented at trial was insufficient to sustain the district court's finding of guilt. When considering a challenge to the sufficiency of the evidence, we view the record in a light most favorable to the conviction and will not disturb the verdict if the fact-finder, "acting with due regard for the presumption of innocence and the requirement of proof beyond a reasonable doubt, could have reasonably concluded that the defendant was guilty of the charged offense." *State v. Dorn*, 887 N.W.2d 826, 830 (Minn. 2016). "This standard applies to both bench trials and jury trials." *Id.*

Neumiller was convicted under Minn. Stat. § 609.2112, subd. 1(a)(1) (2018), which provides that "a person is guilty of criminal vehicular homicide . . . if the person causes the

4

death of a human being . . . as a result of operating a motor vehicle[] in a grossly negligent manner." Neumiller contends that the evidence was insufficient to prove that his driving conduct was grossly negligent.

Minnesota has long recognized that the difference between ordinary and gross negligence is one of degree:

> [']Gross negligence is substantially and appreciably higher in magnitude than ordinary negligence. It is materially more want of care than constitutes simple inadvertence. It is an act or omission respecting legal duty of an aggravated character as distinguished from a mere failure to exercise ordinary care. It is very great negligence, or the absence of slight diligence, or the want of even scant care. It amounts to indifference to present legal duty, and to utter forgetfulness of legal obligations so far as other persons may be affected. It is a heedless and palpable violation of legal duty respecting the rights of others. The element of culpability which characterizes all negligence is in gross negligence magnified to a high degree as compared with that present in ordinary negligence. Gross negligence is a manifestly smaller amount of watchfulness and circumspection than the circumstances require of a person of ordinary prudence.[']

*State v. Bolsinger*, 21 N.W.2d 480, 485 (Minn. 1946) (quoting *Altman v. Aronson*, 121 N.E. 505, 506 (Mass. 1919)); *see State v. Al-Naseer*, 690 N.W.2d 744, 752 (Minn. 2005) (recognizing that *Bolsinger* "adopted" the *Altman* definition of gross negligence).

The dispute here regards whether Neumiller's conduct constituted gross negligence as defined in *Bolsinger*. As to that issue, the district court found:

> [Neumiller], who had traveled through that intersection multiple times a week, *knowingly* failed to come to a complete stop behind the stop sign and instead drove through the intersection right in front of an oncoming vehicle. [He] failed to observe the stop sign and the white stop bar painted on the roadway. He failed to check, and even failed to slow, even

5

slightly, for cross traffic that was traveling at highway speeds and that had the right of way. [Neumiller's] conduct demonstrated a total obliviousness of the intersection and the SUV carrying [the victim].

[Neumiller's] conduct showed a degree of 'inattention to the road' sufficient to meet the gross negligence standard. [His] absence of slight diligence, or the want of even scant care, amounts to an indifference to a present legal duty, and to utter forgetfulness of legal obligations so far as other persons may be affected.

The [c]ourt finds that based upon the evidence presented, the [s]tate has proven beyond a reasonable doubt that [Neumiller's] driving conduct constituted gross negligence, and that by operating a motor vehicle in a grossly negligent manner, [he] caused the [victim's death].

In sum, the district court concluded that Neumiller's driving conduct was grossly negligent because, despite his familiarity with the intersection, his knowledge of the stop sign, and his knowledge that he would cross two lanes of traffic coming from the left at highway speeds, he completely disregarded his legal obligation to stop at the stop line before entering the intersection.

Minnesota's traffic code dictates that every driver "shall stop at a stop sign or at a clearly marked stop line before entering the intersection." Minn. Stat. § 169.30(b) (2018). The preposition "at" in this statute means "a particular place or position." *State v. Gibson*, 945 N.W.2d 855, 858 (Minn. 2020) (emphasis omitted) (quotation omitted). Consequently, "[a] stop line and a stop sign are signals that specify the precise place, location, or position where a driver must stop a vehicle . . . ." *Id.* The supreme court has rejected any interpretation that would permit vehicles to stop "near the position of a stop

sign or clearly marked stop line" because this type of "nebulous stopping area" contradicts the plain meaning of the preposition "at." *Id.*

It is undisputed that Neumiller failed to stop at the stop sign or stop line. In doing so, he also violated another statute that requires a driver to stop and yield before entering a through highway. *See* Minn. Stat. § 169.20, subd. 3(a) (2018) ("The driver of a vehicle shall stop as required by this chapter at the entrance to a through highway and shall yield the right-of-way to other vehicles which have entered the intersection from the through highway or which are approaching so closely on the through highway as to constitute an immediate hazard, but the driver having so yielded may proceed, and the drivers of all other vehicles approaching the intersection on the through highway shall yield the right-of-way to the vehicles so proceeding into or across the through highway."). Moreover, the record indicates that he was inattentive.

Although a failure to stop and yield could constitute mere negligence under other circumstances, given the totality of the circumstances here—including Neumiller's familiarity with the intersection and knowledge of the stop sign—we discern no basis to overturn the district court's determination that Neumiller's driving conduct rose to the level of gross negligence. As the state argues, "stopping well *before* the stop signals and then passing into the intersection without stopping *at* either of them was illegal and contributed substantially to his gross negligence."

None of Neumiller's arguments persuades us otherwise. He first argues that "there is neither evidence of egregious driving conduct nor of negligence" and that the "basis for a finding of gross negligence boils down to one piece of evidence: the four seconds at the

stop sign" when his vehicle did not move. As to those four seconds, the district court found that "[d]ue to the long pause of [Neumiller's] vehicle on the exit ramp before proceeding forward when there were no vehicles immediately in front of him, it is clear to this [c]ourt that [he] was distracted." Neumiller argues that "[t]his is the totality of the evidence supporting the finding of gross negligence" and that "four seconds of distraction while driving does not amount to gross negligence." That argument ignores the other circumstances supporting the finding of gross negligence, including Neumiller's familiarity with the intersection, his knowledge of the stop sign, and his failure to stop or even slow down at the stop sign before entering the intersection from his position two car lengths behind the stop sign. In sum, the district court's finding of gross negligence was not based only on "four seconds of distraction."

Next, Neumiller argues that, even if he was distracted for four seconds while stopped on the exit ramp, "there is no evidence that he was distracted when he entered the intersection." Even if such evidence of distraction was lacking, other circumstances supported a finding of gross negligence, such as Neumiller's knowing failure to come to a complete stop behind the stop sign and his act of driving into a highway intersection in front of the victim's oncoming vehicle.

Finally, Neumiller argues that we should apply heightened scrutiny when reviewing his sufficiency challenge because it is based on circumstantial evidence. If the state relies on circumstantial evidence to prove an element of an offense, this court applies a heightened standard of review. *See State v. Harris*, 895 N.W.2d 592, 601-03 (Minn. 2017); *State v. Al-Naseer*, 788 N.W.2d 469, 471 (Minn. 2010) (stating that "heightened scrutiny

8

applies to any disputed element of the conviction that is based on circumstantial evidence"). "In cases relying on circumstantial evidence, we can affirm a verdict only if the circumstances proved are consistent with the hypotheses that the accused is guilty and inconsistent with any rational hypothesis of innocence." *State v. Kissner*, 541 N.W.2d 317, 321 (Minn. App. 1995), *rev. denied* (Minn. Feb. 9, 1996).

Neumiller argues that although "the fact of the accident is directly established [by the video recording], the finding that [Neumiller] was 'distracted' must be inferred from [the] circumstances." Neumiller hypothesizes that he "was not distracted" and "drove safely." He argues that because he "stopped lawfully at the intersection" and "fulfilled his legal duty to stop," it is reasonable to infer that he stopped behind the two vehicles in front of him "to observe approaching traffic."

The flaw in Neumiller's argument is that he did not stop lawfully at the intersection and he did not fulfill his legal duty to stop. *See Gibson*, 945 N.W.2d at 858 ("A stop line and a stop sign are signals that specify the precise place, location, or position where a driver must stop a vehicle . . . ."). Thus, his proposed inference is not reasonable, and his hypothesis of innocence is not rational.

Neumiller further argues that even if his stop two car lengths behind the stop sign violated the law, caselaw holds that "this minimal violation does not give rise to any presumption of gross negligence." That argument is unavailing because the district court did not apply a presumption of gross negligence; nor do we.

Neumiller doubles down on his claim that he drove safely, arguing that his hypothesis of innocence "is actually the most plausible: [he] drove safely and [the victim]

9

drove incautiously and crashed into him when he otherwise would have cleared the intersection exactly as he intended." Neumiller asserts that the victim caused the accident, noting that she had her cruise control set at 66 mph even though the speed limit was 65 mph and the "advisory" speed limit was 55 mph. He notes that the victim's vehicle was cresting a hill, at an intersection "flagged for safety issue[s]," and "drifted out of the lane [Neumiller] would have cleared first . . . and into the one he would reach later without so much as tapping her brakes." Neumiller argues that the victim "moved her car (for whatever reason) into the space he was moving to occupy," that "she did not brake," and that "[s]he also did not signal her lane change, which might, at least, have given [Neumiller] some indication that a potential impact would be at a different place than it would have been when he started into the intersection."

As support for his claim that he is innocent because the victim caused the accident, Neumiller cites cases stating that the "[c]ontributory negligence of the victim may be considered only insofar as it tends to show that defendant was not negligent or that his acts did not constitute the proximate cause." *State v. Schaub*, 44 N.W.2d 61, 66 (Minn. 1950). The victim's driving conduct does not show that Neumiller's driving conduct was not negligent. Nor does it show that Neumiller's acts were not a substantial factor in causing the victim's death. *See State v. Smith*, 835 N.W.2d 1, 4 (Minn. 2013) ("In order to prove proximate cause, the [s]tate must show that the defendant's acts were a substantial factor in causing the death."). We therefore do not consider the alleged contributory negligence of the victim, and we reject Neumiller's contention that his conviction should be reversed because he entered the highway "safely" and the victim "caused the accident."

10

Admittedly, the line between negligence and gross negligence in the context of criminal vehicular homicide is not clear. And this state's jurisprudence regarding gross negligence in that context does not establish a precise formula for determining whether conduct constitutes gross negligence. But we are influenced by the Minnesota Supreme Court's determination of gross negligence in *State v. Boldra*, 195 N.W.2d 578, 579 (Minn. 1972). The *Boldra* court affirmed a finding of gross negligence where the "defendant ignored a highway stop sign and drove his automobile into an intersection," at a speed of 50 miles per hour, "causing an accident which resulted in the deaths of two people." *Boldra* supports the district court's determination that Neumiller's conduct crossed the line separating negligence from gross negligence. Thus, the evidence was sufficient to establish that Neumiller's conduct constituted gross negligence, as that standard has been described and applied in caselaw. We therefore do not disturb the district court's finding of guilt or Neumiller's resulting conviction.

**Affirmed.**

**ROSS**, Judge (dissenting)

I believe that a driver's failing to re-stop his car immediately at a stop sign before entering an intersection after having stopped and waited two car lengths away from the stop sign constitutes only careless driving but not the substantially more culpable behavior of grossly negligent driving. I therefore respectfully dissent from the majority's decision to affirm Robert Neumiller's conviction of criminal vehicular homicide.

Ordinary negligence and gross negligence involve significantly different, not slightly different, levels of culpability. For almost 80 years, Minnesota has incorporated a definition of "gross negligence" sharply graver than ordinary negligence. *See State v. Bolsinger*, 21 N.W.2d 480, 485 (Minn. 1946) (adopting gross negligence definition). Gross negligence "is very great negligence." *State v. Al-Naseer*, 690 N.W.2d 744, 752 (Minn. 2005) (quoting *Bolsinger*, 21 N.W.2d at 485). It is "substantially and appreciably higher in magnitude." *Id.* It concerns behavior that demonstrates the lack of "even scant care." *Id.* It involves a degree of culpability "magnified to a high degree as compared with" that of ordinary negligence. *Id.* We have said that gross negligence requires "the presence of some egregious driving conduct coupled with other evidence of negligence." *State v. Miller*, 471 N.W.2d 380, 384 (Minn. App. 1991). Put simply, gross negligence involves conduct that is far more blameworthy than ordinary negligence.

Neumiller's blameworthy conduct was entering an intersection controlled by a stop sign without stopping to yield to cross-moving traffic. As the district court found, Neumiller proceeded from his stopped position about two car lengths away from the stop sign and then "failed to come to a complete stop behind the stop sign." This type of

violation is generally treated as careless driving, which is "operat[ing] . . . carelessly or heedlessly in disregard of the rights of others, or in a manner that endangers or is likely to endanger any property or any person." Minn. Stat. § 169.13, subd. 2 (2018). And "[i]n the context of careless driving, carelessness is synonymous with ordinary negligence." *Al-Naseer*, 690 N.W.2d at 752. For example, the supreme court has held that evidence proving that a driver "made [only] a rolling stop at [a] stop sign," accelerated to 20 miles per hour over the speed limit, and then partly veered out of his lane was sufficient to convict the driver of careless driving. *State v. Dille*, 258 N.W.2d 565, 570 (Minn. 1977). We likewise have affirmed a conviction of careless driving when the accused "ran two stop signs." *State v. Teske*, 390 N.W.2d 388, 390–91 (Minn. App. 1986). Consistent with these cases and others, I believe that running a stop sign, without additional dangerous driving behavior, is merely careless driving.

By contrast, running a stop sign in a particularly hazardous manner so as to considerably raise the danger caused by the violation can support a finding that the driver's actions are much more blameworthy, meeting the higher standard of gross negligence. For example, in *State v. Boldra*, the supreme court held that evidence that the driver killed two people in a collision after he "ignored a highway stop sign and drove his automobile into an intersection" of a through highway "without stopping, at a speed of 50 miles an hour or more," supported a conviction of criminal negligence resulting in death. *State v. Boldra*, 195 N.W.2d 578, 579 (Minn. 1972). We have similarly recognized that racing into an intersection in complete disregard of a stop sign is grossly negligent driving. We did so in a well-reasoned, unpublished opinion involving a minivan that entered an intersection also

at about 50 miles per hour, ignoring both a warning sign of an impending stop and the stop sign itself, and collided with a school bus. *State v. Del Cid*, No. A08-2266, 2010 WL 2813324, at *4–5 (Minn. App. July 20, 2010), *rev. denied* (Minn. Sept. 29, 2010). We reasoned that this circumstance supported the jury's finding that the driver "drove the minivan in a grossly negligent fashion." *Id.* at *5. The *Del Cid* reasoning appropriately applies the settled standard of gross negligence. *See Dynamic Air, Inc. v. Bloch*, 502 N.W.2d 796, 800–01 (Minn. App. 1993) (observing that unpublished opinions, although not precedential, may offer persuasive reasoning).

This case is clearly similar to the violating-a-stop-sign cases, involving ordinary negligence, and clearly dissimilar to the violating-a-stop-sign-at-a-dangerous-speed cases, demonstrating gross negligence. Unlike the drivers in the gross-negligence cases, Neumiller simply failed to obey a stop sign while moving at a comparatively slow speed. He undisputedly had stopped his car behind two others at the stop sign at the end of the ramp exiting Interstate 94. He then waited there, still, for those cars to proceed through the intersection. After they moved on and he remained stationary for about four seconds longer, he began forward, pulling into the intersection without again stopping when he reached the stop sign. He entered the intersection apparently without having noticed the car on Highway 23 headed into his path. The state offered no evidence that Neumiller accelerated recklessly or engaged in any other perilous driving behavior. Without question, his failure to re-stop at the stop sign to watch for and yield to crossing traffic was driving heedlessly in a manner "that endanger[ed] or [was] likely to endanger [another] person." Minn. Stat. § 169.13, subd. 2. Neumiller's conduct precisely meets the careless-driving statute,

consistent with our caselaw involving the same conduct. And careless driving is ordinary negligence, not gross negligence.

It is true that Neumiller's careless driving had a tragic end, causing the death of another motorist. But we must consider only the driving conduct itself, not the resulting harm, as "the result . . . play[s no] role" in determining "whether the conduct constitutes gross negligence." *Al-Naseer*, 690 N.W.2d at 752 n.4. Neumiller's driving conduct bears no earmark of gross negligence.

The majority relies on the fact that Neumiller had previously driven through and was familiar with the intersection to support catapulting the ordinary-negligence misdemeanor up to a gross-negligence felony. This reliance is misplaced, because the proper focus on the *actus reus* element involves the driver's *conduct*. *Id.* at 752 ("To determine whether a defendant engaged in gross negligence or ordinary negligence, *the defendant's conduct* must be examined." (Emphasis added.)). The majority does not (and cannot) say that Neumiller's familiarity with the intersection made his conduct of improperly entering it more dangerous than if he had encountered the intersection for the first time. It is possible that a driver's familiarity with some uniquely dangerous feature of an intersection might inform him to be more cautious than a newcomer and that this knowledge might bear on a *mens rea* assessment to determine whether, for example, a driver was "aware of and consciously disregard[ed] a substantial and unjustifiable risk." *See* Minn. Stat. § 169.13, subd. 1 (2018) (defining *mens rea* of "reckless driving"). But the state offered no *mens rea* evidence that Neumiller consciously disregarded any risk, let alone a risk associated with a distinctly dangerous feature of the intersection. Entering the

intersection without re-stopping would constitute ordinary negligence for every driver regardless of familiarity. And despite the district court's conclusory statement that Neumiller's driving demonstrated the absence of even scant care, this is just not so under the uncontroverted evidence. The record established that he had in fact stopped at the end of the exit ramp, albeit two car lengths short of the stop sign, and that when he finally proceeded, he did so at an ordinary pace. That evidence, without more, is insufficient to elevate Neumiller's conduct from negligence to gross negligence.

I do not disregard the notion that whether a defendant's conduct constitutes gross negligence is a question for the fact-finder. *See Al-Naseer*, 690 N.W.2d at 751. But our deference to the fact-finder is not absolute; a finding of fact is not immune from judicial review because it is our duty to determine whether, as a matter of law, the evidence is sufficient to support the finding of guilt based on a proper construction and application of the controlling criminal statute. *See State v. Dorn*, 887 N.W.2d 826, 830 (Minn. 2016). The supreme court has not hesitated to overturn a jury's gross-negligence finding in a civil case after highlighting the substantial difference between ordinary negligence and gross negligence and concluding that "there [was] nothing to lift [that] case out of ordinary negligence and into the class of gross negligence." *Dakins v. Black*, 261 N.W. 870, 873 (Minn. 1935). We should not be overly deferential here, where the trial evidence was insufficient for the district court to find that Neumiller's conduct constitutes gross negligence. Because the state proved only ordinary negligence with no evidence of egregious driving conduct, I believe we ought to reverse and remand the case for the district court to enter a conviction on the lesser offense of careless driving.