STATE OF MINNESOTA

IN SUPREME COURT

A23-1062

Court of Appeals                                            Hennesy, J.
                                      Dissenting, Gaïtas, Moore, III, JJ.

State of Minnesota,

            Appellant,

vs.                                           Filed: December 10, 2025
                                              Office of Appellate Courts
Lisa Dawn Oliver,

            Respondent.

_____

Keith Ellison, Attorney General, Saint Paul, Minnesota; and

Kathryn M. Keena, Dakota County Attorney, Todd P. Zettler, Assistant Dakota County Attorney, Hastings, Minnesota, for appellant.

Cathryn Middlebrook, Chief Appellate Public Defender, John Donovan, Assistant State Public Defender, Saint Paul, Minnesota, for respondent.

_____

S Y L L A B U S

An attempt, charged under Minn. Stat. § 609.17, to commit first-degree assault-harm, Minn. Stat. § 609.221, subd. 1, is a valid crime under Minnesota law.

Reversed and remanded.

1

## OPINION

HENNESY, Justice.

This case concerns respondent Lisa Dawn Oliver's conviction for attempted first-degree assault-harm. *See* Minn. Stat. §§ 609.17 (attempt), 609.221, subd. 1 (first-degree assault-harm). Oliver argues that attempted first-degree assault-harm is not a crime for two reasons: (1) the Legislature did not intend for the attempt statute to apply to assaults; and (2) attempt is a specific-intent crime, while first-degree assault-harm is a general-intent crime, and the intents impermissibly conflict. The State asserts that attempted first-degree assault-harm is a legally recognized crime under Minnesota law and the intent elements of attempted first-degree assault-harm and first-degree assault-harm do not conflict. A divided panel of the court of appeals reversed Oliver's conviction, concluding that attempted first-degree assault-harm is not a crime under Minnesota law. Because we hold that attempted first-degree assault-harm is a valid crime in Minnesota, we reverse and remand to the court of appeals to address arguments that Oliver previously raised but the court of appeals did not address.

## FACTS

In November 2022, law enforcement arrested Oliver for a physical altercation that occurred between her and P.L., the father of her child. Oliver and P.L. had previously been in a romantic relationship and share one daughter together, B. P.L. had sole physical and legal custody of their daughter, although B. frequently visited Oliver on the weekends. On October 23, 2022, B. returned to P.L.'s apartment after spending the weekend with Oliver. P.L. was concerned that spending more time with her mother had caused B.'s behavior to

2

change "in a negative manner." He told B. that he was thinking about reducing the time she spent with Oliver, which upset B., who called Oliver and asked her to come get her.

Later that same evening, Oliver and her friend took a rideshare to P.L.'s apartment to collect B. and bring her back to Oliver's home. After gathering B.'s belongings, Oliver, her friend, and B. waited by the street outside P.L.'s apartment for another rideshare. While they were standing outside, P.L. stepped onto his back patio to smoke a cigarette and noticed Oliver walking towards him, calling him names. The two argued for around eight to ten minutes.

At some point during the argument, Oliver started shoving P.L. P.L. then saw Oliver reach up "with a concealed weapon" and felt her cut his neck. Two neighbors testified that they heard a woman's voice scream, "I'm going to f[]ing kill you. I'm going to f[]ing stab you." P.L. asked his son, who had come outside to watch the argument, to call 911. Oliver walked away from the apartment, asked her friend to get a rideshare back to her house with B., and then ran past them into the surrounding neighborhood. Later that day, Oliver called the friend and told her that she was in a nearby field, that she had sliced P.L.'s neck with a small knife, and that she had disposed of the knife.

When police arrived at the scene, they found P.L. holding a blood-soaked towel to his neck, attempting to staunch the wound. At the hospital, medical personnel closed P.L.'s wound with stitches. At the time of trial, several months later, P.L. had a visible scar on his neck.

The State originally charged Oliver with one count of attempted second-degree intentional murder. *See* Minn. Stat. §§ 609.17 (attempt), 609.19, subd. 1(1) (defining

3

second-degree intentional murder as intentionally causing death without premeditation). The day of trial, the State amended the complaint to add one count of attempted first-degree assault-harm, *see* Minn. Stat. §§ 609.17 (attempt), 609.221, subd. 1 (defining first-degree assault-harm as an assault that results in great bodily harm), and one count of second-degree assault with a dangerous weapon resulting in substantial bodily harm, *see* Minn. Stat. § 609.222, subd. 2. The jury acquitted Oliver of attempted second-degree intentional murder but found her guilty of both attempted first-degree assault-harm and second-degree assault. The district court convicted Oliver of attempted first-degree assault-harm and sentenced her to 45 months in prison.[1]

The court of appeals reversed Oliver's conviction in a two-to-one decision. *State v. Oliver*, 11 N.W.3d 817, 828 (Minn. App. 2024). The majority looked to portions of the first-, second-, third-, and fifth-degree assault statutes and concluded that "the statutory scheme of assault is based on the level of harm inflicted, not intended." *Id.* at 823 (discussing Minn. Stat. §§ 609.221, subd. 1, 609.222, subd. 2, 609.223, subd. 1, 609.224, subd. 1(2)). In doing so, it noted that the first-degree assault-harm statute requires both an assault *and* resultant great bodily harm. *Id.* (citing Minn. Stat. § 609.221, subd. 1 (making it a crime to "assault[] another and inflict[] great bodily harm")). As a result, the majority reasoned that "to be convicted of attempted first-degree assault under Minnesota Statutes

---

[1] The district court did not adjudicate Oliver guilty of second-degree assault-harm, concluding that it is a lesser included offense of attempted first-degree assault-harm. *See State v. LaTourelle*, 343 N.W.2d 277, 284 (Minn. 1984) ("[T]he proper procedure to be followed by the trial court when the defendant is convicted on more than one charge for the same act is for the court to adjudicate formally and impose sentence on one count only.").

section 609.17, subdivision 1, with reference to Minnesota Statutes section 609.221, subdivision 1, the state must prove the defendant assaulted another and inflicted great bodily harm." *Oliver*, 11 N.W.3d at 824.

The court of appeals also relied in part on our decision in *State v. Zupetz*, 322 N.W.2d 730, 735–36 (Minn. 1982), which held that the appellant could not be convicted of attempted second-degree manslaughter involving culpable negligence because it "makes no sense to say" appellant specifically intended to kill the victim by being negligent. The court of appeals here concluded that it is similarly illogical to convict Oliver of attempted first-degree assault-harm because "[t]he specific-intent requirement of the attempt statute is irreconcilable with the general-intent requirement of" first-degree assault-harm. *Oliver*, 11 N.W.3d at 824.

> The court of appeals ultimately held that
>
> [b]ecause attempted first-degree assault-harm, without a finding that the victim suffered great bodily harm, is inconsistent with the statutory scheme for assault, and the specific intent that is required for an attempted crime under Minnesota Statutes section 609.17 (2022) conflicts with the general intent requirement of assault-harm under Minnesota Statutes section 609.221 (2022), appellant may not be convicted of attempted first-degree assault-harm.

*Id.* at 827. It reversed Oliver's attempted first-degree assault-harm conviction and remanded to the district court to enter judgment of conviction and impose a sentence on second-degree assault. *Id.* at 828.[2]

---

[2] Because it reversed Oliver's attempted first-degree assault-harm conviction on the grounds it was not a crime under Minnesota law, the court of appeals did not address Oliver's alternative argument that the State presented insufficient evidence to prove that

5

The court of appeals dissent disagreed and concluded that attempted first-degree assault-harm is a cognizable crime. *Id.* at 828 (Wheelock, J., dissenting). It reasoned that the majority erroneously focused on the assault statutes, rather than the attempt statute under which Oliver was convicted. *Id.* According to the dissent, the elements of attempt—and not the underlying offense—should be the focus in determining "whether a particular set of facts are cognizable as an attempt crime" in Minnesota, because attempt is "its own crime distinct from the attempted offense." *Id.* While the dissent acknowledged that attempt requires proof of a specific intent—whereas first-degree assault-harm requires proof of general intent—it concluded that it is possible to specifically intend to commit a first-degree assault-harm. *Id.* at 828–29. In reaching this conclusion, the dissent disagreed with the majority's characterization of *Zupetz*, observing that *Zupetz* did "not hold that a person cannot be guilty of attempting a general-intent crime." *Id.* at 829. The dissent noted that *Zupetz* held, specifically, that "a person cannot be guilty of attempting second-degree manslaughter—a crime that requires a showing of a mens rea that is inconsistent with specific intent: culpable negligence." *Id.* (citing *Zupetz*, 322 N.W.2d at 735). It pointed out that the reason the court in *Zupetz* determined that the intent elements were inconsistent was because the culpable negligence required for attempted second-degree manslaughter

---

she intended to inflict great bodily harm. *Oliver*, 11 N.W.3d at 822 n.1. The court of appeals also did not address her argument that the district court abused its discretion in denying her motion for a downward dispositional departure in sentencing. *Id.*

Following the court of appeals' decision, Oliver filed a motion in district court under Minn. R. Crim. P. 28.02, subd. 7, seeking release from prison pending this appeal. On October 23, 2024, the district court issued an order releasing her from prison with conditions.

was akin to "a lack of intent," and this lack of intent was logically inconsistent with the specific intent required for an attempt. *Id.* The dissent reasoned that because "first-degree assault does not require a showing of recklessness or negligence . . . the specific intent required for attempt is not irreconcilable with the general intent required for first-degree assault." *Id.* at 830.

The State filed a petition for review, which we granted to address the issue of whether attempted first-degree assault-harm is a valid crime in Minnesota.

**ANALYSIS**

The State charged Oliver under the attempt statute, Minnesota Statutes section 609.17, subdivision 1, which states that "[w]hoever, with intent to commit a crime, does an act which is a substantial step toward, and more than preparation for, the commission of the crime is guilty of an attempt to commit that crime." Subject to an exception not at issue here, the sentence for an attempt is "not more than one-half of the maximum imprisonment . . . provided for the crime attempted." Minn. Stat. § 609.17, subd. 4.

The underlying crime Oliver was convicted of attempting to commit is first-degree assault-harm. A person commits first-degree assault-harm if they "assault[] another and inflict[] great bodily harm."[3] Minn. Stat. § 609.221, subd. 1. The Minnesota Criminal Code defines "[a]ssault" generally as:

---

[3] "Great bodily harm" is defined as "bodily injury which creates a high probability of death, or which causes serious permanent disfigurement, or which causes a permanent or protracted loss or impairment of the function of any bodily member or organ or other

7

(1) an act done with intent to cause fear in another of immediate bodily harm or death; or

(2) the intentional infliction of or attempt to inflict bodily harm upon another.

Minn. Stat. § 609.02, subd. 10. We refer to the first clause in the assault definition, subdivision 10(1), as "assault-fear." *See State v. Fleck*, 810 N.W.2d 303, 305 (Minn. 2012). The second clause, subdivision 10(2), contains two other types of assaults. The first type is "assault-harm," which is the "intentional infliction of . . . bodily harm," otherwise known as a battery.[4] Minn. Stat. § 609.02, subd. 10(2); *State v. Dorn*, 887 N.W.2d 826, 831 (Minn. 2016) (explaining that "[i]n Minnesota, the separate crime of battery has been incorporated into the definition of assault"). The second type of assault set forth in subdivision 10(2),

serious bodily harm." Minn. Stat. § 609.02, subd. 8. There is no dispute between the parties that P.L.'s neck wound did not constitute great bodily harm.

[4] The dissent states that there are only two types of assault—assault-fear and assault-harm—and that assault-harm includes both the intentional infliction of bodily harm and the attempt to inflict bodily harm. But clause 10(2) uses the disjunctive "or" within its definition, which indicates that only one of the two things described is required for there to be an assault. *State v. Loge*, 608 N.W.2d 152, 155 (Minn. 2000) ("We have long held that in the absence of some ambiguity surrounding the legislature's use of the word 'or,' we will read it in the disjunctive and require that only one of the possible factual situations be present in order for the statute to be satisfied."). As a result, we conclude that clause 10(2) describes two separate ways in which a person can commit an assault.

The dissent relies on *State v. Fleck*, 810 N.W.2d at 308, to support its conclusion that there are only two types of assault. *Fleck*, however, does not support this conclusion. In *Fleck*, we addressed the mens rea for assault-fear and assault-harm, holding that assault-fear is a specific intent crime and assault-harm is a general-intent crime. *Id.* at 309–10. Our holding that assault-harm is a general intent crime, however, only addressed assault-harm defined as "the intentional infliction of . . . bodily harm upon another." *Id.* at 308 (stating "[a] person commits the offense of assault-harm through 'the intentional infliction of . . . bodily harm upon another' " (omission in original) (quoting Minn. Stat. § 609.02, subd. 10(2))). We expressly declined to address the argument that assault-attempt was a specific intent crime. *Id.* at 312 n.5.

8

which we will refer to as "assault-attempt," is the "attempt to inflict bodily harm upon another." Minn. Stat. § 609.02, subd. 10(2).

Oliver argues that we should affirm the court of appeals' reversal of her attempted first-degree assault-harm conviction because it is not an offense under Minnesota law for two reasons. First, she argues that the Legislature did not intend for the attempt statute to apply to assaults, and second, if the attempt statute were to apply to the first-degree assault-harm statute, the criminal intents of the two statutes would conflict because attempt is a specific-intent crime and assault-harm is a general-intent crime. The State contends that the attempt statute—Minnesota Statutes section 609.17—plainly applies to the first-degree assault-harm statute and that the two statutes are not legally inconsistent. Because we agree with the State, we reverse the court of appeals and remand for it to consider other issues Oliver raised in her appeal that the court of appeals did not address.

A.

Each party relies on the plain language of the attempt and assault statutes to support its position on whether the attempt statute applies to first-degree assault-harm. Because determining whether attempted first-degree assault-harm is a cognizable offense in Minnesota depends on the meaning of the assault and attempt statutes, we are presented with an issue of statutory interpretation that we review de novo. *See Douglas v. State*, 986 N.W.2d 705, 709 (Minn. 2023) ("When a sufficiency-of-the-evidence claim turns on the meaning of the statute under which a defendant has been convicted, we are presented

with a question of statutory interpretation that we review de novo." (citation omitted) (internal quotation marks omitted)).

Our object in all statutory interpretation is "to ascertain and effectuate the intention of the legislature." *Id.* (quoting Minn. Stat. § 645.16). "The first step in statutory interpretation is to determine whether the statute's language, on its face, is ambiguous." *State v. Thonesavanh*, 904 N.W.2d 432, 435 (Minn. 2017). A statute is ambiguous when it is "subject to more than one reasonable interpretation." *State v. Pakhnyuk*, 926 N.W.2d 914, 920 (Minn. 2019) (citation omitted) (internal quotation marks omitted). If it is ambiguous, then we "may apply the canons of construction to resolve the ambiguity." *Thonesavanh*, 904 N.W.2d at 435.

1.

The State argues that we should focus on the attempt statute, section 609.17, rather than the various assault statutes, and argues that the language of the attempt statute plainly and unambiguously applies to the crime of first-degree assault-harm. Oliver focuses on the assault statutes and argues that their plain language shows the Legislature did not intend for the attempt statute to "attach" to the assault statutes. She argues that the Legislature's inclusion of assault-attempt (the attempted infliction of bodily harm) in the statutory definition of assault demonstrates that the separate attempt statute does not apply. *See* Minn. Stat. § 609.02, subd. 10(2).

We agree with the State that our analysis starts with the attempt statute. Oliver was convicted of an *attempt* crime, not the substantive crime of first-degree assault. In *State v. Noggle*, we explained that attempt crimes are distinct from the underlying crimes being

10

attempted. 881 N.W.2d 545, 549 (Minn. 2016). And in analyzing crimes charged as attempts under section 609.17, we have generally begun our analysis with the language of the attempt statute. *See e.g.*, *State v. Wilkie*, 946 N.W.2d 348, 351–52 (Minn. 2020) (analyzing section 609.17's requirement of "a substantial step toward" committing third-degree criminal sexual conduct); *Tichich v. State*, 4 N.W.3d 114, 123 (Minn. 2024) (analyzing the elements of attempted third-degree criminal sexual conduct under section 609.17). We do the same here, starting our analysis with the text of the attempt statute, section 609.17.

The attempt statute provides: "Whoever, with intent to commit a crime, does an act which is a substantial step toward, and more than preparation for, the commission of the crime is guilty of an attempt to commit that crime, and may be punished as provided in subdivision 4." Minn. Stat. § 609.17, subd. 1. Nothing in section 609.17's plain language indicates it does not apply to particular crimes. *See* Minn. Stat. § 609.17;[5] *see also DeGidio v. State*, 289 N.W.2d 135, 137 (Minn. 1980) (recognizing that "the legislature in enacting the attempt statute [section 609.17] gave no indication that some substantive crimes could not serve as a foundation for attempt convictions"). While we have recognized on one

---

[5] Subdivision 2 of the attempt statute defines an "act." Minn. Stat. § 609.17, subd. 2 ("An act may be an attempt notwithstanding the circumstances under which it was performed or the means employed to commit the crime intended or the act itself were such that the commission of the crime was not possible, unless such impossibility would have been clearly evident to a person of normal understanding."). Subdivision 3 of the attempt statute explains that "[i]t is a defense to a charge of attempt that the crime was not committed because the accused desisted voluntarily and in good faith and abandoned the intention to commit the crime." *Id.*, subd. 3. And subdivision 4 is specific to the penalties under the attempt statute. *Id.*, subd. 4. There is no language in any of these subdivisions indicating that the attempt statute does not apply to certain crimes.

occasion that the attempt statute may be incompatible with some crimes, depending on the intent element of the underlying crime attempted, *see Zupetz*, 322 N.W.2d at 735, the language of the attempt statute does not exempt any substantive crimes from its application. Instead, we conclude that section 609.17 plainly and unambiguously applies to first-degree assault-harm.

Oliver does not address the plain language of the *attempt* statute, but rather focuses her analysis on the *assault* statutes and the general definition of "assault" in the Criminal Code. She argues that the Legislature's inclusion of assault-attempt in its definition of assault "shows that the legislature does not intend for the attempt statute to attach to the assault statutes." Oliver relies on the rule against surplusage, which favors avoiding "interpretations that would render a word or phrase superfluous, void, or insignificant, thereby ensuring each word in a statute is given effect." *State v. Thompson*, 950 N.W.2d 65, 69 (Minn. 2020). She asserts that applying the attempt statute to first-degree assault-harm would essentially read the definition of assault-attempt out of the statute.

The canon against surplusage is an intrinsic canon that "depends solely on the words of the . . . statute itself." *Thonesavanh*, 904 N.W.2d at 436. Oliver argues, however, that the attempt statute should be read together with the assault statutes and the assault definition in applying the canon against surplusage.[6]

---

[6]    Oliver's argument in comparing the two statutory schemes may instead be more accurately characterized as relying upon the related-statutes canon. But the related-statutes canon is an extrinsic canon which only applies upon finding that the statutory language is ambiguous. *See Thonesavanh*, 904 N.W.2d at 437 (defining the related-statutes canon as "allow[ing] two statutes with common purposes and subject matter to be construed together

But even assuming, without deciding, that the canon against surplusage applies, applying the attempt statute to first-degree assault-harm does not render superfluous the assault-attempt language. The offense of attempted first-degree assault-harm, charged under the attempt statute, prohibits different conduct than the offense of first-degree assault-attempt, charged under the assault statutes. Comparing the elements of these two offenses demonstrates that they prohibit different conduct because they have different intent requirements, and only one requires the victim to have suffered physical harm.

We begin with the elements of attempted first-degree assault-harm, charged under the attempt statute—the offense for which Oliver was convicted. The offense of attempt has two elements: (1) a person must specifically intend to commit an offense; and (2) they must take a substantial step toward committing that offense. *See* Minn. Stat. § 609.17, subd. 1 (stating a person commits an attempt when, "with intent to commit a crime, [they] do[] an act which is a substantial step toward, and more than preparation for, the commission of the crime"); *Zupetz*, 322 N.W.2d at 735 ("Specific intent that would give rise to an attempt to commit a certain crime is the intent to commit that *particular* crime."). The offense attempted here was a first-degree assault, which makes it a crime to "assault[] another and inflict[] great bodily harm." Minn. Stat. § 609.221, subd. 1 And in this context, the assault is assault-harm, which is "the intentional infliction of . . . bodily harm upon another." Minn. Stat. § 609.02, subd. 10(2). Attempted first-degree assault-harm, then, charged under the separate attempt statute, requires (1) the specific intent to commit

to determine the meaning of ambiguous statutory language" (quoting *State v. Lucas*, 589 N.W.2d 91, 94 (Minn. 1999)) (internal quotation marks omitted)).

13

first-degree *assault-harm*—in other words, the specific intent to inflict great bodily harm—and (2) taking a substantial step towards inflicting great bodily harm.[7] *See* Minn. Stat. §§ 609.17, subd. 1, 609.02, subd. 10(2).

We next consider the elements of first-degree assault-attempt.[8] Assault-attempt is defined as the "attempt to inflict bodily harm upon another." Minn. Stat. § 609.02, subd. 10(2). First-degree assault-attempt, charged under the assault statutes, is a specific-intent crime because it is an attempt crime. *See Zupetz*, 322 N.W.2d at 734. If the predicate assault for first-degree assault is assault-attempt—an "attempt to inflict bodily harm upon another"—then the intent required is the specific intent to commit the infliction of bodily harm upon another. Minn. Stat. § 609.02, subd. 10(2). A first-degree assault-attempt, then,

---

[7]     The dissent contends that the specific intent we have articulated for attempted first-degree assault-harm—the specific intent to inflict great bodily harm—is contrary to what we said in two of our cases addressing the mens rea for assault-harm and first-degree assault-harm, *Fleck* and *Dorn*. We agree that in *Fleck*, we held that assault-harm is a general-intent crime, 810 N.W.2d at 309, and that in *Dorn*, we held that first-degree assault-harm is a general-intent crime, 887 N.W.2d at 830–31. Both of these cases, however, involved only assault statutes and not the attempt statute. *Fleck*, 810 N.W.2d at 308; *Dorn*, 887 N.W.2d at 829. As a result, our decision here is not contrary to either case.

[8]     The dissent accuses us of formulating "the imaginary offense of first-degree assault-attempt." Because we are relying on statutory language, the dissent's claim that this offense is a figment of our imaginations and has no basis in reality is misplaced. First-degree assault applies to "[w]hoever assaults another and inflicts great bodily harm." Minn. Stat. § 609.221, subd. 1. Applying the statutory definition of assault in Minn. Stat. § 609.02, subd. 10(2), we address the required elements for whoever commits assault-attempt against another and inflicts great bodily harm.

14

requires: (1) the specific intent to inflict *bodily harm* upon another; (2) taking a substantial step towards inflicting bodily harm; and (3) the infliction of *great bodily harm*.[9]

These offenses have different elements. Attempted first-degree assault-harm—charged under the *attempt* statute—requires the specific intent to inflict *great* bodily harm, while first-degree assault-attempt—charged under the *assault* statutes—only requires the specific intent to inflict bodily harm. In addition, the former offense *does not require any* bodily harm be inflicted, but the latter offense requires the *actual infliction* of *great* bodily harm. Because the offenses prohibit different conduct, the assault-attempt language is not rendered superfluous by applying the attempt statute to first-degree assault-harm.

Finally, Oliver and the dissent argue that interpreting the assault statutes to recognize attempted first-degree assault-harm as an offense would unfairly exaggerate the criminality of her conduct because the sentence for attempted first-degree assault-harm, which does not require any harm, is longer than the sentence for second-degree assault when the defendant inflicts substantial bodily harm. But these arguments regarding the consequences of the statute and the object it seeks to obtain introduce canons of

---

[9] In her arguments, Oliver claims that it is not legally possible to commit first-degree assault-attempt, charged under the assault statutes. Oliver asserts that a person who commits an assault by *attempting* to inflict bodily harm cannot also inflict great bodily harm, one of the required elements of this offense. *See* Minn. Stat. § 609.221, subd. 1. We disagree. Consider the facts from our recent decision in *Dorn*, 887 N.W.2d at 829, upholding the defendant's conviction for first-degree assault-harm. In *Dorn*, the defendant pushed the victim in the chest, and he fell into a fire. *Id.* With just a slight modification, however, those facts demonstrate how a person can commit first-degree assault-attempt: if the defendant had attempted to push the victim, but did not touch the victim, yet the victim fell backwards into the fire in order to avoid the push, the defendant would have committed first-degree assault-attempt.

construction that only apply if we conclude the statute is ambiguous. *See State v. Serbus*, 957 N.W.2d 84, 89 (Minn. 2021) ("When a statute is ambiguous, we may consider additional canons of construction to determine the intent of the Legislature," including the consequences of a particular interpretation. (citing Minn. Stat. § 645.16)). We have not concluded that any language in these statutes is ambiguous. Because we conclude that the attempt statute in section 609.17 plainly and unambiguously applies to first-degree assault-harm, we need not address this post-ambiguity argument.

2.

The dissent takes issue with our statutory interpretation analysis. It considers only the assault statutes and concludes that they create a statutory scheme that includes attempts to inflict bodily harm within assault-harm. Under this statutory scheme, the degree of an assault-harm would be based on the level of harm inflicted, not the level of harm intended. Because Oliver's conviction for attempted first-degree assault-harm is based on the level of harm she intended to inflict, and the level of harm she actually inflicted did not meet the requirement for first-degree assault, the dissent contends that Oliver's conviction for attempted first-degree assault-harm is inconsistent with the statutory scheme for assault and cannot stand.

We reject the dissent's conclusion for two reasons. First, the dissent ignores a critical fact: Oliver was not charged with or convicted of violating an assault statute. She was charged with and convicted of violating the *attempt* statute. The dissent acknowledges that in *Noggle*, we held that attempt is its own crime, distinct from the offense attempted. *See* 881 N.W.2d at 545, 549. Nevertheless, while Oliver was not charged under the

16

statutory scheme the dissent invokes, the dissent makes no argument why the attempt statute does not apply to first-degree assault-harm.

Second, the dissent relies on an assumption unsupported by any language in any of the assault statutes. Even if the assault statutes create the statutory scheme the dissent endorses, there is no language in any assault statute indicating that its statutory scheme is exclusive. Stated differently, no word or phrase in any assault statute suggests that a person must exclusively be charged under the assault statutes when they have attempted to inflict some level of bodily harm upon another. The dissent impermissibly reads language into the assault statutes when it concludes that the attempt statute cannot be used to charge the separate offense of attempted first-degree assault-harm. *See State v. Hill*, 23 N.W.3d 824, 834 (Minn. 2025) (declining to adopt an interpretation of a statute that would "read additional language into the statute"); *Energy Pol'y Advocs. v. Ellison*, 980 N.W.2d 146, 158 (Minn. 2022) (rejecting an interpretation of a statute as unreasonable because it "would require us to add language to the statute"). The dissent also cites no law to support its claim that the existence of a statutory scheme precludes a person from being convicted of an offense outside of that statutory scheme.

Instead, the plain language of the attempt statute indicates that it applies to first-degree assault-harm, and no language in the assault statutes indicates that the attempt statute cannot apply to first-degree assault-harm. In this circumstance, we are not "formalistic[ally]" engaging in statutory interpretation in an impermissible manner when we conclude that attempted first-degree assault-harm is a crime under Minnesota law. Rather, by recognizing that attempted first-degree assault-harm is a crime, we are

17

appropriately deferring to the Legislature's authority to determine what acts are criminal. *See State v. Lindsey*, 632 N.W.2d 652, 658 (Minn. 2001) ("The legislature has the power to declare what acts are criminal and to establish the punishment for those acts as part of the substantive law.").

## B.

Because we hold that the independent attempt statute can apply to first-degree assault-harm, we must address Oliver's contention that the mental state elements of the two statutes conflict. This is a legal question that we review de novo. *See Zupetz*, 322 N.W.2d at 733; *Dorn*, 887 N.W.2d at 830.

Oliver argues that the attempt statute cannot be applied to the first-degree assault-harm statute because the specific intent required to commit attempted first-degree assault-harm and the general intent required for first-degree assault-harm are legally irreconcilable. The State asserts that the attempt statute can apply to a general-intent crime such as first-degree assault-harm because the specific intent to commit first-degree assault-harm does not conflict with the general intent required to commit assault-harm. We agree with the State.

Specific-intent crimes require an "intent to cause a particular result." *Fleck*, 810 N.W.2d at 308 (citation omitted) (internal quotation marks omitted). General-intent crimes, on the other hand, only require proof the defendant intended to do the forbidden act—not that the defendant intended any particular result. *Id.* We have held that both

18

assault-harm, *id.* at 309, and first-degree assault-harm, *Dorn*, 887 N.W.2d at 830–31,[10] are general-intent crimes. Attempts, on the other hand, are specific-intent crimes. *See Zupetz*, 322 N.W.2d at 734. It is not inherently contradictory for a person to have a general intent to intentionally commit an act that constitutes a battery against another person and, at the same time, have the specific intent to cause a particular result—for example, great bodily harm—by committing that battery.

Both Oliver and the court of appeals relied on *Zupetz* in concluding the two intent elements here are inconsistent. *Zupetz*, however, is distinguishable. In *Zupetz*, we found that it was impossible to attempt an offense—second-degree negligent manslaughter—that is committed through culpable negligence. 322 N.W.2d at 735–36; *see* Minn. Stat. § 609.205(1) (second-degree manslaughter). We reasoned that the defendant could not have both "specifically *intended* to cause [the victim]'s death" while also "creat[ing] an unreasonable risk and consciously t[aking] the chance of causing her death or injury." *Zupetz*, 322 N.W.2d at 735. And we concluded that it is "illogical that someone could intend to cause someone else's death through negligence or even recklessness." *Id.*

We see no comparable inconsistency in applying the attempt statute to first-degree assault-harm. Unlike in *Zupetz*, the "distinguishing element" of first-degree assault-harm is *not* a "lack of intent," which could render the attempt statute inapplicable. *Id.* Rather, the mental state element of first-degree assault-harm, a general-intent crime, is merely

---

[10] In affirming Dorn's conviction for first-degree assault-harm, we reiterated that "assault-harm requires 'only an intent to do the prohibited physical act of committing a battery.' " *Dorn*, 887 N.W.2d at 830 (quoting *Fleck*, 810 N.W.2d at 310).

"intend[ing] the act that makes [the] conduct a battery." *Dorn*, 887 N.W.2d at 831 (addressing the intent required for a conviction of first-degree assault-harm, in violation of Minn. Stat. § 609.221, subd. 1). It is not illogical that someone could generally intend to do an act that actually causes bodily harm to another while having the specific intent to cause them great bodily harm. This is because the general intent is merely *the intention to do the physical act*, while the specific intent is *the intent to cause the result*.

Our recent decision in *Tichich v. State* further demonstrates how it can be legally consistent to attempt to commit a general-intent crime. In *Tichich*, the defendant contested his guilty verdicts for both attempted and completed third-degree criminal sexual conduct, arguing that they were legally inconsistent.[11] 4 N.W.3d at 122. In upholding the validity of Tichich's convictions, we identified two elements the State had to prove when it charged an attempt:

> To find Tichich guilty of *attempted* third-degree criminal sexual conduct [charged under section 609.17], the jury needed to find that Tichich (1) intended to commit third-degree criminal sexual conduct and (2) did an act which was a substantial step toward, and more than preparation for, the commission of the crime.

*Id.* at 123. We concluded it is not legally inconsistent to find that the defendant had the general intent required for third-degree criminal sexual conduct, that is, the general intent to sexually penetrate, and the specific intent to commit the offense of third-degree criminal

---

[11] We acknowledge that Oliver is not contesting the legal consistency of her guilty verdicts, unlike the defendant in *Tichich*. *See Tichich*, 4 N.W.3d at 122 ("Convicting a defendant after a jury renders legally inconsistent verdicts is an error because such an inconsistency suggests that the jury's underlying factual findings are invalid."). Her argument is that attempted first-degree assault-harm is not a cognizable crime under Minnesota law. We use the reasoning of *Tichich* only to guide our analysis here.

sexual conduct. *Id.* at 123 & n.9. Similarly, here, it is not legally inconsistent to find that the defendant had both the general intent to do the physical act that resulted in bodily harm and the specific intent to commit first-degree assault-harm.

We therefore hold that the specific-intent requirement of the separate attempt statute is legally compatible with the general-intent requirement for first-degree assault-harm.

\* \* \*

In summary, we conclude that the attempt statute, Minn. Stat. § 609.17, applies to first-degree assault-harm, Minn. Stat. § 609.221, subd. 1, and that there is no conflict between the intent elements of attempted first-degree assault-harm and first-degree assault-harm. Accordingly, we hold that attempted first-degree assault-harm, charged under the attempt statute, is a crime under Minnesota law. Because the court of appeals erred in finding that attempted first-degree assault-harm is not a valid crime under Minnesota law, we reverse and remand to the court of appeals to consider other issues Oliver raised in her appeal but that the court of appeals did not address.

## CONCLUSION

For the foregoing reasons, we reverse the decision of the court of appeals and remand for further proceedings consistent with this opinion.

Reversed and remanded

DISSENT

GAÏTAS, Justice (dissenting).

I disagree with the court's decision that attempted first-degree assault-harm is a valid crime under Minnesota law. In my view, the court's approach to the statutory interpretation question is based on a faulty premise and does not meaningfully address Oliver's argument. Given the unique structure of the statutory scheme for assault offenses and this court's case law, I conclude that attempted first-degree assault-harm is not a crime. Thus, I respectfully dissent.

A.

As an initial matter, I disagree with the court's analysis of the statutory interpretation question presented here—whether the statutory scheme for assault offenses inherently conflicts with the attempt statute. The court's analysis largely relies on the premise that it should "begin" its statutory interpretation exercise by considering the plain language of the attempt statute, section 609.17, wholly separate from the assault statutes. To support this premise, the court relies on *State v. Noggle*, 881 N.W.2d 545, 549 (Minn. 2016), which holds that attempt crimes are distinct from the underlying crimes being attempted. The court also cites two earlier cases in which the court purportedly "began" its analysis with the language of the attempt statute. *See State v. Wilkie*, 946 N.W.2d 348, 351 (Minn. 2020); *Tichich v. State*, 4 N.W.3d 114, 123 (Minn. 2024). Based on the premise that it should "begin" with the attempt statute, the court focuses on the plain language of that statute. It observes that the attempt statute does not contain any language stating that it does *not* apply to assaults. And having begun the analysis with the plain language of the attempt statute,

D-1

the court effectively ends there, concluding that the attempt statute must apply to assaults because it does not explicitly state otherwise.[12]

I have a few concerns about the court's approach. First, I disagree with the court's premise—that we should "start" the analysis with the attempt statute. Our decision in *Noggle*, which serves as the foundation for this premise, holds that because an attempt is a distinct crime and not merely a sentence modifier, a ten-year conditional release mandated for designated sex offenses is not required when a defendant's conviction is for an *attempt* to commit a designated sex offense. 881 N.W.2d at 549–51. It is a stretch to rely on *Noggle* to conclude that because an attempted offense is qualitatively different from a completed offense, the court can only consider the attempt statute here, where Oliver is arguing that the structure of the assault statutes precludes the charge of attempted first-degree assault. Moreover, the two other cases that the court relies on for the proposition that we should always "start" our analysis in attempt cases with the language of the attempt statute do not set forth such a rule. In *Wilkie*, the defendant argued that the State's evidence failed to establish that his act was "a substantial step toward, and more than preparation for" the commission of third-degree criminal sexual conduct. 946 N.W.2d at 351–52 (quoting Minn. Stat. § 609.17, subd. 1). The court began its analysis by considering the language of the attempt statute because the issue before it concerned the meaning of that language.

---

[12]    The court does acknowledge, however, that notwithstanding the plain language of the attempt statute, the court previously recognized that the statute does not apply to another offense—culpable-negligence manslaughter. *See State v. Zupetz*, 322 N.W.2d 730, 733–36 (Minn. 1982). While acknowledging that *Zupetz* is problematic to its statutory interpretation analysis, the court does not attempt to reconcile this problem.

In *Tichich*, the legal issue was whether the appellant's convictions for both completed and attempted third-degree criminal sexual conduct were legally inconsistent. 4 N.W.3d at 122. To determine whether those two convictions were inconsistent, the court was required to identify the elements of both offenses. However, the court did not "start" its analysis with the attempt statute. *Id.* at 123. It first identified the elements of the completed crime and then considered the elements of the attempt offense. *Id.*

Second, by starting (and ending) its analysis with the attempt statute, the court does not meaningfully evaluate Oliver's argument, which is about the assault statutes. Although Oliver's argument is based on the structure of the assault statutes, the court indicates that considering the assault statutes would be inconsistent with the court's approach to statutory interpretation, which begins and ends with the plain language of a statute unless the statute is ambiguous. The court then focuses on the language of the attempt statute because considering the language of the assault statutes would not be an "intrinsic" analysis focused on the "words of the . . . statute itself" as required by our statutory interpretation rules stated in *State v. Thonesavanh*, 904 N.W.2d 432, 436 (Minn. 2017). But with this formalistic approach, the court bypasses the heart of Oliver's argument, which is that the structure of the statutory scheme for assaults shows that the Legislature did not intend for the attempt statute to be used in conjunction with those statutes. Oliver's argument then falls by the wayside, a victim of an unbending approach to statutory interpretation.

The court does briefly consider the definition of assault-harm, agreeing that an assault-harm includes both an act that causes bodily harm and an attempt to cause bodily harm. But the court concludes, without support, that there is a separate offense of

D-3

"first-degree assault-attempt," and thus "applying the attempt statute to first-degree assault-harm does not render superfluous the assault-attempt language." As discussed below, I disagree that the statutory scheme for assault offenses includes the offense of Oliver's conviction—attempted first-degree assault-harm. But I also disagree with the court's formulation of the imaginary offense of first-degree assault-attempt in its endeavor to disprove Oliver's argument without addressing the full scheme of Minnesota's assault statutes.

For these reasons, I am not convinced by the court's analysis. As explained below, I instead conclude that Oliver has the stronger arguments based on the structure of the assault statutes and our case law.

B.

Putting aside the attempt statute for the time being and considering the substance of Minnesota's assault statutes, I am persuaded that the structure of these statutes precludes the offense of attempted first-degree assault.

Minnesota law defines an assault as "(1) an act done with intent to cause fear in another of immediate bodily harm or death; or (2) the intentional infliction of or attempt to inflict bodily harm upon another." Minn. Stat. § 609.02, subd. 10. Based on this statutory definition, we have held that there are "two distinct forms of assault." *State v. Fleck*, 810 N.W.2d 303, 308 (Minn. 2012). The first is assault-fear, which is "an act done with intent to cause fear in another of immediate bodily harm or death." *Id.* (quoting Minn. Stat. § 609.02, subd. 10(1)). The second is assault-harm, which is "the intentional infliction of

or attempt to inflict bodily harm upon another." *State v. Dorn*, 887 N.W.2d 826, 829 (Minn. 2016) (quoting Minn. Stat. § 609.02, subd. 10(2) (internal quotation marks omitted)).

At issue in this case is the second type of assault: assault-harm. The statutory definition of assault-harm encompasses both assaults that result in bodily harm and *attempts* to inflict bodily harm. Minn. Stat. § 609.02, subd. 10(2).

For assault-harm offenses, the assault statutes generally tie the degree of the assault crime to the harm that is actually inflicted. A first-degree assault, for example, occurs when a person "assaults another and inflicts great bodily harm."[13] Minn. Stat. § 609.221, subd. 1. The offense of third-degree assault occurs when a person inflicts "substantial bodily harm."[14] Minn. Stat. § 609.223, subd. 1. And a fifth-degree assault occurs when a defendant inflicts bodily harm or attempts to inflict bodily harm.[15] Minn. Stat. § 609.224, subd. 1(2).[16]

---

[13] "Great bodily harm means bodily injury which creates a high probability of death, or which causes serious permanent disfigurement, or which causes a permanent or protracted loss or impairment of the function of any bodily member or organ or other serious bodily harm." Minn. Stat. § 609.02, subd. 8 (internal quotation marks omitted).

[14] "Substantial bodily harm means bodily injury which involves a temporary but substantial disfigurement, or which causes a temporary but substantial loss or impairment of the function of any bodily member or organ, or which causes a fracture of any bodily member." Minn. Stat. § 609.02, subd. 7a (internal quotation marks omitted).

[15] Bodily harm is defined broadly to mean "physical pain or injury, illness, or any impairment of physical condition." Minn. Stat. § 609.02, subd. 7.

[16] There are a few deviations from the statutory scheme of connecting the degree of the offense to the harm inflicted that are based on the identity of the victim. The offense of fourth-degree assault occurs when a person inflicts or attempts to inflict bodily harm on a peace officer, firefighter, medical worker, or correctional employee. Minn. Stat.

Second-degree assaults always involve a dangerous weapon. *See* Minn. Stat. § 609.222, subds. 1–2. When a person uses a dangerous weapon to commit an assault-harm—regardless of whether harm is attempted or actually inflicted—the resulting offense is a second-degree assault. Minn. Stat. § 609.222, subd. 1. When the assault involves a dangerous weapon and results in substantial bodily harm, it is a more serious second-degree assault. Minn. Stat. § 609.222, subd. 2.[17]

The statutory scheme for assaults thus contemplates scenarios where a person *attempts* to inflict bodily harm but fails to do so. When a person attempts but fails to inflict bodily harm, the person has committed a fifth-degree assault, unless the person used a dangerous weapon, in which case the person has committed a second-degree assault. *See id.*; Minn. Stat. § 609.224, subd. 1(2).

Given this statutory scheme, a person who attempts but fails to inflict bodily harm cannot be guilty of a higher degree of assault than fifth-degree assault. And by logical extension, a person who attempts to inflict more bodily harm than is actually inflicted cannot be guilty of a higher degree of assault than that which corresponds to the degree of bodily harm actually inflicted.

---

§ 609.2231. And in addition to prohibiting an assault that results in substantial bodily harm, the third-degree assault statute applies to assaults committed against a young child or against a child who has been the victim of a pattern of abuse. Minn. Stat. § 609.223, subds. 2–3.

[17] The jury found Oliver guilty of this offense, in addition to attempted first-degree assault.

Correspondingly, we have held that a defendant who inflicts a *greater* degree of bodily harm than intended is criminally responsible for the degree of bodily harm actually inflicted. *Dorn*, 887 N.W.2d at 831–33. In *Dorn*, the court upheld the defendant's first-degree assault conviction where the defendant's push caused the victim to fall into a bonfire and to sustain great bodily harm, even though the defendant did not specifically intend to push the victim into the bonfire or to inflict the resulting degree of harm. *Id.*

Minnesota's assault statutes make clear that the degree of an assault-harm— regardless of whether harm is attempted or inflicted—is based on the *level of harm inflicted*, not the level of harm *intended*. The State's theory—that Oliver should stand convicted of attempted first-degree assault because she *intended* to inflict great bodily harm while *actually inflicting* substantial bodily harm—is inconsistent with the statutory scheme. Based on the statutory scheme, Oliver's conviction for attempted first-degree assault cannot stand. An assault with a dangerous weapon that causes substantial bodily harm is a second-degree assault.

Although I believe the assault statutes unambiguously support my interpretation, dispensing with any need to consider legislative intent or public policy, it is worth mentioning that the court's approach raises a few such concerns. First, I worry that the court's approach could lead to disparities in the way that assault crimes are prosecuted. A prosecutor in one corner of the state could charge a defendant who committed an assault-harm that did not inflict harm with fifth-degree assault, while a prosecutor in another corner of the state could charge the same offense as an attempted first-degree assault based on the defendant's alleged intent to inflict great bodily harm. Second, the

court's approach could result in sentencing manipulation. As Oliver notes, the presumptive sentence for an attempted first-degree assault may be more than twice as long as the presumptive sentence for second-degree assault. In some cases, an upcharge to an attempted first-degree assault may result in a prison sentence for a defendant who otherwise would receive a stayed sentence for a lesser degree of assault. These implications of the court's approach are troubling.

C.

Finally, I also conclude that the court's decision that a person can attempt to commit a first-degree assault-harm is at odds with prior case law addressing the intent required for assault-harm and the intent required for attempt offenses under section 609.17.[18]

We held in *State v. Fleck* that assault-harm is a general-intent crime. 810 N.W.2d at 309–10. A general-intent crime requires only an intent to do the act that resulted in the harm. *Id.* at 308. Under *Fleck*, therefore, a defendant's intent to inflict a particular level of harm is irrelevant to the degree of assault committed. *See State v. Wilson*, 830 N.W.2d 849, 853 (Minn. 2013) (explaining that, for a general-intent crime, "[i]t is not necessary that [the actor] intend the resulting harm or know that his conduct is criminal"). Rather, as noted, the degree of assault is determined by the level of harm *actually inflicted*. *Dorn*, 887 N.W.2d at 833.

---

[18] The attempt statute states, "Whoever, with intent to commit a crime, does an act which is a substantial step toward, and more than preparation for, the commission of the crime is guilty of an attempt to commit that crime." Minn. Stat. § 609.17, subd. 1.

An attempt under section 609.17, however, is a specific-intent crime. *See State v. Zupetz*, 322 N.W.2d 730, 735 (Minn. 1982) ("Specific intent that would give rise to an attempt to commit a certain crime is the intent to commit that *particular* crime."). Thus, to commit an *attempted* first-degree assault, a person would need to have both a general intent to perform the act that may or may not result in bodily harm *and* a specific intent to inflict a particular level of harm.

Although general intent and specific intent may not be legally inconsistent, Oliver points out that the charge of attempted first-degree assault creates another quandary. Such a charge adds an intent element that does not exist under the assault statutes and that our assault-harm case law has rebuked: a specific intent to cause a certain degree of harm. To prove an attempted first-degree assault, the State must establish the defendant's intent to cause great bodily harm. This element is not found in the assault statutes, however. And it is directly contrary to what we said in *Fleck* and *Dorn*—assault-harm is a general-intent crime, and a defendant is criminally responsible for the harm caused, not the harm intended.

The court rejects this proposition, citing our decision in *Tichich v. State*. 4 N.W.3d 114 (Minn. 2024). There, we determined that a defendant's convictions for third-degree criminal sexual conduct and attempted third-degree criminal sexual conduct were not legally inconsistent because general intent and specific intent can simultaneously exist. *Id.* at 123 & n.9. We stated that a defendant could simultaneously have the specific intent to commit the offense of third-degree criminal sexual conduct (the intent required for an attempt) and the general intent to sexually penetrate (the intent required for third-degree criminal sexual conduct). *Id.* Here, analogizing to the circumstances in *Tichich*, the court

D-9

states, "[I]t is not legally inconsistent to find that the defendant had both the general intent to do the physical act that resulted in bodily harm and the specific intent to commit first-degree assault-harm."

I disagree with the court's reasoning. First, the problem Oliver identifies is not legal inconsistency. It is the addition of a new intent element that does not exist in the attempt statute and that is contrary to *Fleck* and *Dorn*—an intent to cause great bodily harm. Second, the intent required for assault-harm is *not* general intent to cause bodily harm. We stated in *Fleck* that the general intent required for assault-harm is simply the intent to perform the physical act that caused the harm. 810 N.W.2d at 309. For these reasons, *Tichich* is unhelpful here.

I agree with Oliver that the offense of attempted first-degree assault cannot be squared with our case law regarding the intent required for assault-harm and for attempt under section 609.17. This problem further supports the conclusion that attempted first-degree assault is not a valid crime under Minnesota law.[19]

\* \* \*

Because I conclude that attempted first-degree assault is not a valid crime, I would affirm the court of appeals' decision reversing Oliver's conviction for this offense and directing the district court to enter judgment of conviction for second-degree assault and impose a sentence for that offense.

---

[19] A review of Minnesota case law reveals that, although some defendants have been convicted of the offense of attempted first-degree assault, there are no appellate decisions addressing the statutory interpretation issue raised here.

MOORE, III, Justice (dissenting).

I join in the dissent of Justice Gaïtas.